Good afternoon, your honors. Jonathan Kirschbaum, Office of the Federal Defender for Mr. Hamilton. I'd like to reserve two minutes for rebuttal. The record clearly establishes that counsel failed to consult with Hamilton about an appeal. Counsel's testimony could not be any more clear. There was a lack of discussion about an appeal. Counsel failed in his obligation to, at the very least, make reasonable efforts to discern Hamilton's wishes about an appeal. We did talk to him about an appeal. No, I believe his testimony was specifically that there was a lack of discussion about an appeal. What he did testify to is that he spoke to him about a post-conviction proceeding. However, that is insufficient to establish consultation. Consultation requires that counsel take reasonable steps to discern Hamilton's wishes. And clearly, by raising the issue of a post-conviction, Hamilton was expressing his dissatisfaction with the conviction, and counsel acknowledged that, that Hamilton was upset. And it's clear that when they spoke about post-conviction, that that raised the obligation upon counsel to question him about an appeal, and he just did not do that. Well, counsel, I find this very confusing, because if you look at the Nevada Supreme Court's decision, they said that defense counsel testified. There was an evidentiary hearing in State court, right? That's correct. And defense counsel testified that Hamilton had informed him he intended to pursue post-conviction remedies, but did not express an interest in pursuing a direct appeal. That's correct. And then it goes on to say Hamilton testified that he requested an appeal, but the district court acted within its discretion in finding defense counsel's testimony to the contrary more credible. So I read that to mean that Hamilton's position in the State court was that he did request an appeal. So I don't know why we're here saying that there was no consultation. That's what's confusing me. Well, I think at this point this Court has already credited the State court's finding that Hamilton's testimony was not believable. So I think at this point that's not a factual issue that's before the Court that was actually resolved on the first appeal. Is that how you read our decision on the first appeal? Yes. And so I think at this point, if counsel's testimony is credited and Hamilton's testimony that there was a lack of discussion about an appeal is really the end-all, be-all about the issue of consultation. And I think what you're basically saying is that, and that's sort of my question, there was discussion of an appeal, at least the topic was raised. Your position is there wasn't adequate discussion. I don't think that the record establishes that there was a discussion about an appeal. I think the record establishes, and if you credit counsel's testimony, there was a discussion about a post-conviction proceeding and a post-conviction proceeding only. Counsel made it abundantly clear that there was a lack of discussion about an appeal. And I'm not quite sure how his testimony about a lack of discussion about an appeal can mean that they actually spoke about an appeal. I think that's what counsel was saying. He was saying that our conversation reflected what I wrote in the letter. And in his letter, he indicated that, you know, I'm very surprised that you wanted to bring in an appeal because we only spoke about a post-conviction proceeding. So I think that when it comes to the Supreme Court was very clear about what the standard is for consultation. And it's both to give advice and also to make reasonable efforts to get information from the defendant. And I think counsel's testimony is very clear that he didn't do any of that. He didn't give – he didn't explain the advantages and disadvantages of bringing an appeal. And it's clear that if he had, any reasonable defendant, including Hamilton, who later expressed a desire to bring an appeal, would have brought an appeal. I mean, the advantages and disadvantages were clear here. There were no disadvantages to bringing an appeal. He ran no risk. But I thought that the principal issues were ineffectiveness of counsel that would be post-conviction. Well, those were the issues that were raised in post-conviction, but that doesn't mean that Hamilton didn't have issues to raise on direct appeal. I mean, what were the issues that I heard referenced or read referenced to DNA? What else? Well, there was the DNA issue. There are direct appeal issues that could have been raised. There's legal insufficiency. There was abuse of discretion when it came to imposing the habitual sentence. I mean, this was a – Mr. Hamilton received life in prison based on possession of a single rock of crack cocaine. The cocaine was not on his person. It was found a distance away from him. And that's what the evidence was. So clearly he could have challenged the evidence of trial. He could have raised the issue of whether the imposition of a life term based on possession of – which was, I believe, $10 worth of crack cocaine was an abuse of discretion. And so these are issues that ran no risk to him. The advantages of bringing a direct appeal was that he could raise the direct appeal issues. And if he skipped his direct appeal and went to post-conviction, then he was giving up his direct appeal claims. And no rational defendant in that situation getting a life term based on such a small – based on possessing such a small amount of crack cocaine would give up that type of remedy. And also we know from the letter that Hamilton eventually sent to his attorney that he did want to bring an appeal. And clearly this is almost the prototypical situation where you would think that if counsel adequately consulted a defendant about bringing an appeal, that the case would be brought to trial. One thing I'm not sure of, and I've got time. Just one question. In your argument, how do you deal with the Supreme Court's Harrington case, which seems to say that because this is a State prisoner habeas case, that we ask ourselves not just what the State Supreme Court said, but what any fair-minded jurors could argue could have supported the decision by the State court? So how do you address that? And also in doing that, address, please, the district court's statement that consultation could include the written document that the lawyer said was in his file and must have been given to Mr. Hamilton. Certainly, Your Honor. First, with respect to Richter, this Court made clear in the case of Candidate that any justification logic that Your Honor just mentioned only applies when there's no reasoned decision. But when there is a reasoned decision, you look at the actual reasoning that the State court gave. And in this court, the State court ñ and in this case, the State court gave a reasoned decision. However, they just didn't apply the entire Flores-Ortega standard. And because of that, that's why the deferential standard should not apply here. With respect to the memorandum, the memorandum ñ handing Mr. Hamilton the memorandum clearly was insufficient to establish consultation under the Supreme Court's definition of consultation. Even if the memorandum ñ and we're not conceding that it meets the advising part, but just handing Mr. Hamilton the memorandum is not sufficient to establish the reasonable efforts that counsel must make in order to obtain the defendant's desires with respect to bringing an appeal. By handing Hamilton the memorandum, no matter what that memorandum says, counsel has the obligation to raise this issue. Counsel has the obligation to make the effort to find out. He can't shift the duty or the burden over to the defendant by handing him a piece of paper. Counsel must follow up. It's counsel that must raise it with the defendant. You're down to less than two minutes. You're on reserve. I would, Your Honor. Thank you. Good morning, Your Honors. My name is Jared Frost. I'm a Deputy Attorney General with the Office of the Nevada Attorney General. It's my pleasure to be here today representing the respondents. This case has been pending since 2006. We were here three years ago reviewing the district court's denial of Mr. Hamilton's petition. We went back to district court to review this sole claim, whether Mr. Hamilton's counsel was ineffective for failing to perfect a direct appeal. And, you know, there are a number of deference issues in this case that are important, as Judge Gould mentioned, but I think they're not controlling. And the reason for that is that Mr. Hamilton hasn't shown that he's, that counsel is ineffective under either the deferential Strickland standard or even the more deferential standards of AEDPA. And, you know, the basic thrust of the Strickland standard is that counsel is presumed to be competent. And in order to establish that he's entitled to relief, Mr. Hamilton has to overcome that presumption. And in Flores-Ortega, we know that that presumption applies also to these types of claims where the allegation is that counsel failed to file a direct appeal. And Flores-Ortega has this spectrum, if you will, that it assesses ineffectiveness. On one end of the spectrum, there's circumstances where counsel ignores a direct request by the defendant to file a direct appeal. On the other end of the spectrum, there are cases where the defendant says, no, I don't want to file a direct appeal. And there's no ineffectiveness in those circumstances. And then there's the cases where the defendant doesn't, the defendant indicate one way or another. And in certain circumstances, counsel has a duty to consult with the defendant. What do you make of the rational defendant language in the Supreme Court case? I mean, it's different from Mosada, the Nevada Supreme Court standard. Would you agree? It is, Your Honor. So in your view, what additional duties are imposed on counsel by Flores-Ortega that are not present in Mosada? Well, Your Honor, what Flores-Ortega says is that the court has to review whether a rational defendant would have wanted to appeal. And that can be because he made some type of express request for that or it may be because there were good appellate issues for him to raise. So and that's not contained in Mosada, right? I don't recall specifically, Your Honor. Right. And the other difference between Mosada, at least among several, is that Mosada is actually stricter in some respects because it presumes prejudice and Flores-Ortega does not, right? I believe so, Your Honor. That's right. So here's the – I guess here's the question for me is that what is this duty to consult and to conclude whether a rational defendant would have appealed or not? Because that seems to be the question in this case. There are appellate issues. A rational defendant probably would have appealed. How do you see the case being – that requirement being satisfied in this case? Well, Your Honor, in order to get there, first, the defendant has to show that no consultation occurred, and that's really where the problem comes in for Mr. Hamilton. What we have is a record that's inconclusive. What Mr. Hamilton was arguing in state court was that he had a conversation with his attorney, and he told his attorney that he would file a direct appeal for him. And what he didn't pursue was a claim or what he didn't develop factually is whether what type of conversation, if any, occurred on the question of whether he wanted to file a direct appeal. What we do know is that there was some conversation about what to do after sentencing. We do know that counsel testified that there was a memorandum that was likely provided to Mr. Hamilton that explained his right to appeal that may have satisfied the consultation requirement. As the district court noted, there's no requirement that that information be provided in a face-to-face conversation. We also know that counsel wrote Hamilton in April 2002 and expressed surprise that Mr. Hamilton wanted to file a direct appeal, that instead Mr. Hamilton has said he wanted to do or go forward with a post-conviction action, which may have been a very reasonable decision if he wanted to speed up the process and get to what he felt were his strongest claims, which were claims of ineffective assistance of counsel. So, anyway, while not conclusive, the record, I think, strongly suggests that there was some type of conversation about a direct appeal. Mr. Hamilton indicated he wanted to go forward instead with a post-conviction action. And that's essentially what the district court held, isn't it? That's correct. The district court relied on the fact that he took the position in the State court that he had said that he wanted, told the counsel that he wanted to appeal. He did. And there's a second piece of the district court's analysis that I think is quite key here, which is that the district court noted that, again, that Hamilton made little, if any, effort to try and develop the facts that would support this consultation question. Hamilton did not question Attorney Bell specifically about the issue of consultation. He did not offer any specific testimony about this himself. He did not preserve the memorandum for appellate purposes. And, you know, as I cited in my brief, the Supreme Court has said in Burke v. Titlow that, you know, it should go without saying that the absence of evidence in a claim of ineffective assistance of counsel can't overcome the strong presumption of attorney competence. So when we're faced with an inconclusive record of this type, I think it's quite clear that release should be denied. Do you read our ---- Counsel, go ahead. No, go ahead. I was just going to ask you the same question I asked your friend on the other side of the case, and that is, does Harrington have any significance here or Richter v. Harrington? Does it apply? The appellant's lawyer said it does not require any kind of deference because the state court gave a reasoned explanation, and it would only apply if they were silenced. Thank you for the question, Your Honor. Yes, I believe Harrington v. Richter does apply in this situation. And the reason is, is that Hamilton's basic thrust is that deference shouldn't be applied here because the state court was required, had an obligation, to address this issue of consultation. And he's relying on cases, Rompea, Wiggins, Proctor, I believe, in which the state court didn't address either the deficient performance prong or the prejudice prong of Strickland. As we know, both of those prongs must be established in order to get relief. But Roe v. Flores-Ortega is different. It allows defendants or Petitioners to take alternative theories for relief. They can establish that counsel, you know, I told counsel that I was going to, that I wanted to appeal and he didn't do it. Or the defendant can say I didn't tell anything to my counsel and counsel did not consult with me. But he doesn't have to establish both. And, in fact, they're typically not argued that way because they're inconsistent. Well, he seems to have argued both here. He's tried to, yes, Your Honor. And that's the problem, is that in state court, what the claim was is that I talked, I had a conversation with my attorney, and we're looking at something different here, the record doesn't, the record is inconclusive, and we don't have the evidence that would need to make, to support the claim here. One thing I found odd about the way this case evolved at the time is that the, his counsel says, well, I would never have been involved in an appeal because I was consular counsel, and I don't even know what issues were really ripe for appeal or that were valuable for appeal, which suggests to me he didn't do any appellate analysis at all. It seems to me, and I'm giving you a chance to respond, it looked to me as though he was just saying, look, all I want to do is find what the guy wants to appeal. If he does, then I send a letter and I wash my hands of the case, and if he doesn't, then that's the end of it. It doesn't suggest that he really did any analysis. Do you read it that way? It did look like counsel was saying that he viewed that his job was to determine or determine what the wishes of the defendant were and that he was going to pass the appeal on to another attorney. But it also suggests that he did review the record. As you mentioned, he said that there was this DNA issue that was potentially an issue to raise on appeal. You looked at that issue in connection with a related ineffective assistance of counsel claim and decided it didn't have any merit. But anyway, as I've said, it's quite reasonable for an attorney or a defendant in Mr. Ortega's case to have a position that said, well, I'm going to do this, and I'm not going  But I think that there's a legitimate opportunity for relief by pursuing a post-conviction action. Of course, you could do that anyway. There's no zero sum. You could. There would be a delay, Your Honor, but yes, you could do that. Okay. Any further questions? None there. Thank you. Thank you. Appreciate it. Thank you. We hear a rebuttal. Just a few things. Flores Ortega does not establish alternative theories for relief. It's a single standard about ineffectiveness when it comes to whether or not counsel should be filing a notice of appeal on a defendant's behalf. The issue boils down to counsel's duty. And in the vast majority of cases, counsel has the duty to consult. And this case clearly falls comfortably within that vast majority of cases. This was a jury trial case. The defendant got a lifetime sentence for possession of a single rock of crack cocaine. The reasonableness of Hamilton wanting to go to post-conviction as opposed to an appeal is belied by the record, because Hamilton sent the letter to counsel saying that he wanted to bring an appeal. So it clearly was not Hamilton's intent to skip the appeal to go to post-conviction. When it comes to a direct appeal after a jury trial, no rational defendant is going to skip an available remedy, particularly one that is the only opportunity he's going to have to raise certain issues. And as mentioned before, issues such as abuse of discretion with respect to the sentence. I mean, that in particular, he received an habitual sentence for one of the most minor crimes. What's the remedy here that you seek? The remedy that we seek is a reinstatement of his direct appeal. And if the State won't reinstate his direct appeal, then a release from custody, so a conditional grant based on that. With respect to the factual record presented to the State court, I still have a couple of seconds left. With respect to the factual record made in State court, no more facts need to be established here. Counsel's testimony was abundantly clear. There was a lack of discussion about an appeal. He also described the memorandum. He says that the memorandum basically indicated what the defendant's right was, was the right to bring an appeal, whether it was a jury trial or a guilty plea. But each individual case, the duty is going to be different with respect to the advantages and disadvantages. And no piece of paper is going to be enough in order to provide that advice to the defendant. And I think he testified that he knew he had a right to appeal, right? I'm sorry. Say again? He testified that he knew he had a right to the appeal. Hamilton did. Yes. He did testify to that. All right. Any further questions? Okay.  to argue today. I appreciate it. Thank you. The case will be submitted for decision and we'll begin recess.
judges: SCHROEDER, THOMAS, GOULD